UNITED STATES *v.* W. X. HUBER (No. 4753)[1]

United States Court of Customs and Patent Appeals, June 17, 1953

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

*Lawrence, Tuttle & Harper (George R. Tuttle* and *Frank L. Lawrence* of counsel) for appellee.

[Oral argument April 13 1953, by Mr. Weeks and Mr. Tuttle]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, rendered pursuant to its decision, C. D. 1451, directing the Collector of Customs to reliquidate certain entries and to refund certain sums exacted thereon.

The facts in the case are as follows: Appellee, W. X. Huber, was the owner of an importing firm known as the W. X. Huber Co. In June and August of 1940 this firm entered the involved merchandise, which had been imported from China, at the port of Los Angeles. The estimated duty was paid on each of these importations and, according to Customs Regulations, the collector selected certain parcels of each importation for examination and appraisement by the appraiser. Under a Term Consumption Entry Bond, executed by appellee, the remainder of the parcels were released to appellee's firm. Within a short time after receiving the parcels selected by the collector for examination the appraiser informed the collector that

[1] C. A. D. 531.

he would not be able to determine the value of the merchandise imported until he received information from the exporting country, and informed the collector that he estimated that the increase in value of the imports would be approximately fifty per cent on one entry and thirty per cent on the other. Thereupon the collector instructed the appraiser that he could release the merchandise in his custody to the importer because appellee had furnished satisfactory security. Eighteen months later, in January of 1942, the appraiser completed his appraisement and reported his decisions to the collector. In the first mentioned importation there was an increase in dutiable value of seventy-five per cent and in the other importation there was an increase in dutiable value of twenty-nine per cent. The collector duly notified the importer of the increase in appraised value and demanded that he either pay the additional duties, assessed because of the increase in value of the goods, or else deliver the merchandise, that had been released under the bond, to the appraiser's warehouse. The importer refused to do either, and after a period of time the collector assessed the importer certain sums in liquidated damages under the provisions of Article 1270 (c), Customs Regulations of 1937, and as provided for in the aforementioned bond of the importer. Appellee paid the sums demanded and then filed a protest as to each importation as provided by sections 514 and 515 of the Tariff Act of 1930.

Appellee contends that the demand for the return of the released merchandise was not made within the time set by Article 316 of the Customs Regulations of 1937 and as provided in the Term Consumption Entry Bond. The pertinent provisions of Article 316 and the aforementioned bond of appellee are as follows:

Art. 316. Recall of merchandise released from customs custody. * * *

(c) A demand for the redelivery of the merchandise shall be made when the appraiser's report indicates that increased or additional duties will accrue, unless the increased or additional duties are promptly deposited, provided that such demand must be made within 20 days after the appraiser's report.

Term Consumption Entry Bond.

*     *     *     *     *     *     *

Whereas, the said principal expects to enter certain imported articles at the port of Los Angeles * * * and desires release of all or part of the articles prior to ascertainment by customs officers of the quantity and value thereof, and of the full amount of duties and charges due thereon * * *

Now, therefore, the condition of this obligation is such, that (1) If the above-bounden principal shall redeliver or cause to be redelivered to the order of the Collector of Customs, when demanded by such collector (the demand to be made not later than twenty (20) days after the appraiser's report), such of the merchandise as was not sent to the public stores, * * * or if in the event of failure to comply with any or all of the conditions hereinabove referred to, he shall pay the said collector an amount equal to the value of said articles as set forth in said entry, plus the duty thereon; * * * Then this obligation to be void; otherwise to remain in full force and effect.

It is the appellee's contention that the *appraiser's report* referred to in both article 316 (c), *supra*, and the Term Consumption Entry Bond, *supra*, means any communication from the appraiser to the collector notifying him that additional duties might be required on imported goods. Appellee argues that the action of the appraiser, in informing the collector that he, the appraiser, would be unable to appraise the merchandise immediately and that he estimated the appraised value of the merchandise would be increased over the entered value, approximately fifty per cent as to one entry and thirty per cent as to the other, constituted the appraiser's report referred to in Article 316 and in appellee's bond. Therefore, since demand for redelivery was not made within twenty days after this notice, the demand for return of the merchandise or payment of additional duties, which was made within twenty days after the report of final appraisement, was illegal and void, and the sums collected as liquidated damages under the bond for failure to redeliver are also illegal and void.

The government contends that the term "appraiser's report" refers only to the report of the appraiser giving the appraised value of the merchandise. To support this contention the government cites sections 499 and 500 of the Tariff Act of 1930, as amended [19 U. S. C. 1499, 1500], the pertinent portions of which are as follows:

SEC. 499. Examination of Merchandise.—Imported merchandise, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, *shall not be delivered* from customs custody, *except under such bond or other security* as may be prescribed by the Secretary of the Treasury to assure compliance with all applicable laws, regulations, and instructions which the Secretary of the Treasury or the Customs Service is authorized to enforce, until it has been inspected, examined, or appraised and is *reported by the appraiser* to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States * * *. [Emphasis added.]

SEC. 500. Duties of Appraising Officers.

(a) Appraiser.—It shall be the duty of the appraiser under such rules and regulations as the Secretary of the Treasury may prescribe—

(1) To appraise the merchandise * * *;

(2) To ascertain the number of yards, parcels, or quantities of the merchandise ordered or designated for examination;

(3) To ascertain whether the merchandise has been truly and correctly invoiced;

(4) To describe the merchandise in order that the collector may determine the dutiable classification thereof; and

(5) To report his decisions to the collector. * * *

The government argues that from the language of sections 499 and 500, *supra*, it is indicated that the "appraiser's report" is the report by the appraiser to the collector that the appraiser has completed his duties and listed his findings as prescribed by law, and that this report is the "appraiser's report" referred to in Article 316 and appellee's bond.

It seems to us that the Term Consumption Entry Bond serves a two-fold purpose; first, to secure the revenue of the United States, and second, to permit the importer to secure the release of all or part of the articles imported "prior to the ascertainment * * * of the full amount of duties and charges due thereon". If appellee's position were to be upheld it would seem obvious that the second purpose of the bond could not be fulfilled in many instances. The reason for the importer to desire the release of the articles imported prior to the liquidation of the entry is so that he may have possession and full control over the use or disposal of the merchandise. Were we to uphold the theory advanced by appellee this would not be possible in many cases since the importer would have to redeliver the goods to the collector, to be held by him until final appraisement was made, if there were any indication that the final appraised value of the goods would be higher than the estimated entered value. This would be necessary because the revenues of the United States could only be protected under this theory by the collector's demanding redelivery of the imported merchandise. In the instant case, the increased duties on the value as estimated by the appraiser were not sufficient duties on the importations as the appraised value was actually increased seventy-five per cent on one importation and twenty-nine on the other. With the final appraisal of the goods the collector could request the payment of the increased duties found to be due on the increase in appraised value over that estimated by the appraiser, but he could not demand redelivery of the goods if the additional duties were not paid because, under appellee's theory, the time for making demand for redelivery would have expired. It follows that the collector could not demand liquidated damages for failure to redeliver nor could he proceed under the bond, for by this construction the bond would be void. Therefore, in any case similar to the present case, the collector would have no choice but to hold all of the imported merchandise until they were finally appraised by the appraiser. This would completely defeat the second purpose of the bond and render it a useless gesture as far as both the importer and the collector are concerned.

Another reason that urges us to accept the government's construction of the term "appraiser's report" is found in section 501 of the Tariff Act of 1930, the pertinent portion of which is set out in Article 863 (a) of the Customs Regulations of 1937, which is as follows:

Art. 863. Appeal, method of—Time limit.—(a) Tariff Act of 1930, section 501: * * * The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, * * * [Emphasis added.].

Here the term "appraiser's report" can only mean the report of the appraiser to the collector giving the appraiser's decisions as to the

appraised value of the imported goods. No other communication from the appraiser to the collector would suffice since to appeal for reappraisement there must necessarily be an appraisement to appeal from. Inasmuch as the term "appraiser's report" used in this article of the Customs Regulations can only be construed to mean the report of final appraisement, we are constrained to apply the same construction to the term wherever else it appears in the regulations.

From the foregoing it would seem obvious that the only construction that could be placed on the term "appraiser's report" as referred to in both Article 316, *supra*, and appellee's bond, *supra*, would be that report of the appraiser to the collector giving the appraised value of the imported goods as determined by the appraiser. As we have shown, to uphold the position of appellee would place an undue burden on both the importer and collector and, in many instances, make the filing of a Term Consumption Entry Bond a useless gesture.

The only other point to be considered is appellee's second argument that even though the demand for the return of the goods was made within the twenty day period required by the bond and Article 316, the sums assessed and collected were actually the increased duties due on the goods and not liquidated damages as claimed by the collector. If the sums collected were the increased duties, then appellee could not be forced to pay them and they should be refunded since appellee was released from liability for any increased or additional duties by his compliance with section 485 (d) of the Tariff Act of 1930, which is as follows:

SEC. 485. Declaration. * * *

(d) A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. * * *

Appellee complied with this section and now argues that the sums collected as liquidated damages were in fact the additional duties due on such articles as were released to him under his bond before final appraisement. The bond provides that if the obligor does not redeliver the articles on demand of the collector "he shall pay the said collector an amount equal to the value of said articles as set forth in said entry, plus the duty thereon." In the two entries under consideration here, one contained three parcels, one of which was released to the importer, and the other contained five parcels, three of which were released to the importer. With reference to the first mentioned entry, the additional duty demanded was $501.15 and for failure to pay such duty or redeliver the parcel released, liquidated admages of $214.70 were demanded and collected as provided for in the bond. This sum is said by appellee to be the portion of the total increased duty that

was due on the one parcel released to him. A mere cursory inspection shows that this sum is not a third of the increased duty. However, it is exactly one-third of the entered value plus the duty thereon. The entered value of this entry was given at $339.00 and the duty assessed thereon $305.10. This totals $644.10 and therefore for the one parcel released the value plus the duty would be one-third of this or $214.70. With respect to the second mentioned entry, the additional duty demanded was $248.50 and for failure to pay such duty or to redeliver the three parcels that had been released, liquidated damages of $438.90 were demanded and collected as provided for in the bond. This sum quite obviously bears no relation whatsoever to the increased duty demanded on the entry, but it is exactly equal to the entered value of the three parcels plus the duty thereon. The entered value of this entry was $385.00 and the duty thereon $346.50. The total is $731.50 and therefore the liquidated damages for the three released parcels would be three-fifths of this amount or $438.90, the amount demanded and collected.

From the foregoing it is apparent that the argument of appellee that the sums assessed as liquidated damages were actually the increased duties due on the released parcels is without merit. The sums assessed and collected as liquidated damages were in fact the liquidated damages specified in the bond.

For the reasons stated hereinbefore we are of the opinion that the term "appraiser's report" as used in both Article 316 of the Customs Regulations of 1937 and the Term Consumption Entry Bond filed by appellee should be construed as meaning the report of the appraiser to the collector giving the appraiser's decision on the appraised value of the merchandise, and no other communication from the appraiser to the collector will suffice. Therefore, the demand made by the collector for the return of the released merchandise was legal and valid, and the sums assessed and collected for non-delivery as provided for in the bond were also legal and valid.

The judgment appealed from is *reversed*.

GARRETT, Chief Judge, dissenting.

I disagree with the holding of the majority reading:

* * * that the term "appraiser's report" as used in both Article 316 of the Customs Regulations of 1937 and the Term Consumption Entry Bond filed by appellee should be construed as meaning the report of the appraiser to the collector giving the appraiser's decision on the appraised value of the merchandise, and no other communication from the appraiser to the collector will suffice.

I prefer to state my views in an order somewhat different from that followed in the majority decision.

The legal questions involved in the two protests are identical, and my views will be summarized in connection with Protest 160662–K/ 39650, Entry No. D. E. 9653, dated June 19, 1940.

On that date a consumption entry of merchandise imported from China, described on the entry paper as "3 Bales contg. Cotton Lace Articles," was made at Los Angeles, California by W. X. Huber Co., Customs Broker [1] for, or on account of Paul S. Lin & Company. On the back of the entry paper there appears a "Declaration of Nominal Consignee or Agent," signed by an attorney-in-fact for Huber and notarized, in which it is stated that Paul S. Lin & Company "is the actual owner for customs purposes of the said merchandise." This is stamped as being filed in the Customs House in Los Angeles, June 24, 1940, at 2:05 p. m.

There is also of record an official paper stamped as being filed July 3, 1940, at 4:22 p. m., entitled "Declaration of owner for merchandise obtained in pursuance of a purchase or agreement to purchase," which declares Paul S. Lin & Co. to be the actual owner for customs purposes of the merchandise, etc. It is signed by a Mr. Lee, stated to be a member of the owner's firm.

Huber testified that at the time of entry he gave bond for the production of an owner's declaration and that he caused the document signed by Lee to be filed with the collector.

So, obviously, there was compliance with the provisions of paragraph (d) of section 485 of the 1930 Tariff Act which reads as follows:

(d) A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee.

It is understood that *estimated* customs duty (I presume at the rate of 90 % ad valorem on the invoice price under paragraph 1529 of the 1930 Tariff Act) was paid without any appraisement of value or any finding of other requisite factors having been made—a very common practice. Whether in this instance the payment was made by the owner, Lin & Co., or by the broker, Huber, is not stated.

On July 9, 1940, fifteen days after the entry, the appraiser transmitted to the collector a statement on an official, printed customs form, No. 6523, then in use,[2] which was introduced in evidence as appellee's collective Exhibit 2. It reads:

---

[1] It is noted that in the majority opinion it is said that W. X. Huber "was the owner of an importing firm." I do not understand that he was an importer in any sense other than as customs broker. He testified that he became engaged in the customs brokerage business in 1925 or 1926 and that he was active in the business "up until 1942." It seems that although he was the sole owner of the business, he conducted it under the name of "W. X. Huber Company."

[2] Use of Custom Form 6523 seems to have been discontinued following the promulgation on June 21, 1950 of T. D. 52508 (85 Treas. Dec. 188) in furtherance of T. D. 52403 (85 Treas. Dec. 33) approved February 8, 1950, but it (6523) was in force during the transactions here involved.

NOTICE OF WITHHELD APPRAISEMENT (Value)

United States Customs Service

*Los Angeles, July 9, 1940.*

*Collector of Customs:*

Appraisement is being withheld pending investigation as to value on the following importation of Chinese Tuscany Lace Articles De 9653, 6-19-40, China.

It is estimated that the maximum advance in dutiable value of this importation will amount to 50 %.

Remarks: Pending report of Foreign Investigation.

(Completed Jan. 28, 1942)

G. R. GULICK,

Per CDG, *Appraiser of Merchandise.*

Since there is no question as to the notice having been transmitted to the collector on July 9, 1940, it is obvious that the notation "(completed Jan. 28, 1942)" just above the signature of the appraiser was added to the paper after the appraisement had been completed.

The completed appraisement of value was indicated by red ink notations on the entry paper and a summary of it, dated Jan. 28, 1942, is held by the majority to be the " 'appraiser's report' as used in both Article 316 of the Customs Regulations of 1937 and the Term Consumption Entry Bond filed by appellee."

For reasons hereinafter stated, it is my opinion that the statement transmitted to the collector by the appraiser on July 9, 1940, itself constitutes an appraiser's report that falls clearly within the purview of the statutes and regulations, and that it is the critical report here applicable.

The merchandise was released from the custody of the appraiser July 10, 1940, the day following the appraiser's notice, upon the following statement signed by the collector:

Importer, Paul S. Lin Co.    W. X. Huber, Broker.

This notice must be presented at the Entry Division, Customhouse, to secure authority for release of the packages in the Appraiser's Stores.    Appraiser:

Satisfactory security having been furnished by the importer, you may release the packages in your custody if all other requirements have been met.

*Collector of customs,*

By F. W. SCHOEPPE.

*Jul 10, 1940.*

The collector on that date had notice from the "Declaration of Owner" filed July 3, 1940, that Paul S. Lin & Co. was the owner of the merchandise and the actual party in interest, and that the broker, who was a nominal consignee, upon filing the owner's declaration (which, so far as the record shows, was in the usual and proper form and was approved) was released from liability for any additional or increased duties that might be found to be due by reason of section 489 of the Tariff Act of 1930.

Seemingly, however, no bond was required of Paul S. Lin & Co., and the collector, apparently treating the broker as the importer, relied upon a "Term Consumption Entry Bond" executed by the broker with United States Fidelity and Guaranty Company, as security.

The bond so relied upon (omitting signatures) read:

No. 282

UNITED STATES CUSTOM SERVICE

Term Consumption Entry Bond

(To redeliver merchandise, to produce documents, and to perform conditions of release, such as to label, hold for inspection, set-up, etc. To be taken in all cases when release is requested prior to inspection, examination, or liquidation).

KNOW ALL MEN BY THESE PRESENTS, That W. X. Huber Company (a fictitious name owned by W. X. Huber) of 124 W. 4th St., Los Angeles, Calif., as principal, and United States Fidelity and Guaranty Co., 111 W. 7th St., Los Angeles, and (a Maryland corporation), of Calif. as sureties, are held and firmly bound unto the United States of America in the sum of Ten Thousand dollars ($10,000.00), for the payment of which we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

WITNESS our hands and seals this 12th day of July, 1939.

WHEREAS, the said principal expects to enter certain imported articles at the port of Los Angeles within a period of one year from July 12, 1939 to and including July 11, 1940 and desires release of all or part of the articles prior to ascertainment by customs officers of the quantity and value thereof, and of the full amount of duties and charges due thereon, and prior to the decision by the proper officer as to the right of said articles to admission into the United States:

Now, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That—

(1) If the above-bounden principal shall redeliver or cause to be redelivered to the order of the Collector of Customs, when demanded by such collector (the said demand to be made not later than twenty (20) days after the appraiser's report), such of the merchandise as was not sent to the public stores, and also shall redeliver to the collector, on demand by him, in accordance with law and regulations in effect on the date of the release of said articles, any and all merchandise found not to comply with the law and regulations governing its admission into the commerce of the United States, and if the said principal shall mark, label, clean, fumigate, destroy, export, and do any and all other things in relation to said articles that may be lawfully required, and shall hold the same for inspection and examination; or if, in the event of failure to comply with any or all of the conditions hereinabove referred to, he shall pay the said collector an amount equal to the value of said articles as set forth in said entry. [sic] plus the duty thereon;

(2) And if the above-bounden principal shall deliver to the said collector such consular invoices, declarations of owners or consignees, certificates of origin, certificates of exportation, and other declarations, certificates, and documents as may be required by law or regulations in connection with the entry of said articles, and in the form and within the time required by law or regulations, or any lawful extension thereof, or in the event of failure to comply with any or all of the conditions of this section, shall pay to said collector such amounts as liquidated damages as may be demanded by him in accordance with the law and regulations, not exceeding the penal sum of this obligation for any breach or breaches thereof;

Then this obligation to be void; otherwise to remain in full force and effect.

It will be noted that the bond which was numbered 282, was general in its terms and made no reference to any particular importation. It was broad enough to cover any and all entries of any and all kinds of imported merchandise, no matter where it came from, made by W. X. Huber Company "within a period of one year from July 12, 1939, to and including July 11, 1940." Hence, it covered the entry of June 19, 1940, which I am particularly discussing but was not specifically directed to such entry.

(It may be said that another bond, No. 6, executed July 12, 1940, covered all entries made "within a period of one year from July 11, 1940, to and including July 10, 1941; so, it covered the second entry involved in this proceeding made August 13, 1940.)

The following provisions of the Customs Regulations of 1937, under which the transactions here in question took place, are deemed pertinent:

Art. 314. *Bond—Deposit of estimated duties—Permit.—*(a) When the importer desires the release from customs custody of any part of the merchandise before (1) the full amount of duties * * * has been ascertained by liquidation of the entry * * * he shall file a bond on customs Form 7551 or 7553 or other appropriate form, at the time of entry or prior to such release. * * * (Italics quoted.)

Art. 315 [as amended by T. D. 49658, following the Customs Administrative Act of 1938]: *Release of examined packages.—** * *

(b) Merchandise which has not been designated for examination for the purpose of appraisement or otherwise may be released from customs custody in accordance with the provisions of article 314.

Art. 316. *Recall of merchandise released from customs custody.—** * * (Italics quoted.)

(b) The collector may demand the return to customs custody of any merchandise which has been released therefrom, provided such demand is made within 20 days after the appraiser's report.

(c) A demand for the redelivery of the merchandise shall be made *when the appraiser's report indicates that increased or additional duties will accrue, unless the increased and* additional duties are promptly deposited, provided that such demand *must be made within 20 days after the appraiser's report.* (Italics mine.)

Referring first to Article 316 (c), it is noted that the word "report" is used twice therein, and that certain crucial phraseology is "when the appraiser's report *indicates* that increased or additional duties will accrue." "Will," as used in the regulation, obviously refers to future action or findings.

The actual advancement by the appraiser on January 28, 1942, of the customs duties in this case, which, incidentally, is not specifically named as a "report" in the assessment itself, was not indicative of something which *might be found necessary in the future.* It was itself *fait accompli*—a completed finding which could be changed thereafter only as a result of a successful appeal to reappraisement.

The provision in paragraph (c) of Article 316, *supra*, requiring that the demand for redelivery of merchandise *must* be made within twenty

days after the appraiser's report was certainly a reasonable one and, by its very nature, it seems to me that it strongly implied applying the word report in the regulation to the notice given the collector by the appraiser that accrual of increased or additional duties was *indicated*. In this case, the appraiser stated the reason for withholding appraisement, viz., a foreign investigation.

The interest of the Government here was primarily—probably it is not going too far to say wholly—in obtaining the proper customs duties. A report made while the merchandise was still in the custody of the appraiser that an advance in dutiable value was indicated (meaning, of course, that it was indicated by information within the appraiser's possession) naturally tended to be of aid to the collector in "protecting the revenue." The merchandise might then have been retained in customs custody, or perhaps the additional duties might have been paid by the actual owner (the broker himself having been relieved of liability for such duties, as hereinbefore recited) or unquestionable security might have been obtained.

The only action taken by the collector, however, was to release the merchandise from customs custody. Thereafter, nothing was done until February 3, 1942, when a demand was made upon the broker—not upon the owner of the merchandise—that either (a) the merchandise itself be returned, or (b) the broker pay what was called liquidated damages, the damages being alleged to result from the failure to return the merchandise.

The return of the merchandise which the collector himself had directed released from customs custody at a time when it was so situated and might have been retained, had become impossible with the lapse of time. The broker, of course, had no control over it nor any responsibility for it after its release by the collector.

The report of the appraiser to the collector was made as a matter of official duty.

The majority decision sets out the statutory duties of the appraiser. It is required, among other things, that he appraise the merchandise under such rules and regulations as the Secretary of the Treasury may prescribe.

The appraiser's action in sending the notice to the collector was an essential part of his duty in connection with the appraisement which eventually he had to make.

In the brief for the Government it is said:

* * * If the construction which the Customs Court has placed on the words "appraiser's report" were to prevail, the collector would be required to make demands for the redelivery of merchandise based on such tentative preliminary notices which after investigation might be required to be ignored. The Court should not strain to place such a construction on the words "appraiser's report" as would lead to such a harsh imposition on the importers unless it was clearly Congress's intention to do so.

As to this, I am unable to conceive of a construction more harsh than that for which counsel for the Government contend, it being one whereby a customs broker—not the actual importer or owner—will be refused refund of monies exacted from him under the state of facts hereinabove related.

It is important to "protect the revenues" of the Government by collecting all customs duties, but collection from one not liable should not be insisted upon.

I feel no strain in so holding.

I shall not attempt a discussion of the "liquidated damages" feature of the case because I think the trial court arrived at the correct conclusion in sustaining appellee's contention respecting the report made by the appraiser to the collector on July 9, 1940, and its judgment should be *affirmed*.

O'CONNELL, J., joins in this dissent.